SO ORDERED.

Dated: January 12, 2022

Eddward P. Ballinger Jr., Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

In re:

GPMI, CO., an Arizona corporation,

EIN 86-0635770

Debtor.

Chapter 11

Case No. 2:22-bk-00150-EPB

**INTERIM ORDER (I) AUTHORIZING SECURED POST-POSTPETITION FINANCING AND FACTORING AGREEMENT ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. §§ 363, 364, AND 507(b); (II) GRANTING RELATED RELIEF; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001; AND (IV) AUTHORIZING USE OF CASH COLLATERAL**

This matter comes before the Court pursuant to the DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION FACTORING AND FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF (the "**Motion**") filed by Debtor on behalf of its bankruptcy estate (the "**Estate**"), the debtor and debtor-in-possession in the above-captioned Case.[1]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

In the Motion, pursuant to §§ 363, 364 and 507(b) of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (as amended, the "**Bankruptcy Code**") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 4001-4 of the Local Bankruptcy Rules for the District of Arizona, Debtor requests authorization to enter into post-petition financing and a factoring agreement (collectively, the "**DIP Facility**") from FSW Funding ("**DIP Lender**") in the form of a factoring agreement and secured credit facility of up to an aggregate principal amount of $2.5 million under the terms and conditions of a *Factoring and Security Agreement*, *Addendums A* and *B* thereto, and a *Loan and Security Agreement* (collectively, the "**DIP Loan Documents**"), attached hereto as **Exhibit 1**.

Debtor also requests that a final hearing (the "**Final Hearing**") be scheduled by this Court to consider entry of a final order (the "**Final Order**") authorizing on a final basis, inter alia, the DIP Facility. The Debtor requests authority to use up to $330,255.64 of the DIP Facility pursuant to this Interim Order and the remaining monies up to an aggregate principal amount of $2.5 million pursuant to the Final Order.

After due and sufficient notice of the Motion under the circumstances having been given for interim relief; and a Preliminary Hearing on the Motion (the "**Preliminary Hearing**") having been held before this Court on January 11, 2022 at 2:00 pm, and upon the entire record made at the Preliminary Hearing, including the *Declaration of Yarron Bendor in Support of Debtor's Chapter 11 Petitions and First Day Motions* and *Supplemental Declaration of Yarron Bendor in Support of Debtor's Chapter 11 Petitions and First Day Motions* submitted in support of the Motion, and all other evidence and argument presented at the Preliminary Hearing; and this Court having found good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND CONCLUDED** that:

A. On January 10, 2022 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Case.

B. This Court has jurisdiction over the Case and the Motion pursuant to 28 U.S.C. §§157(b) and 1334. The Motion presents a core proceeding as defined in 28 U.S.C. §157(b)(2).

Case 2:22-bk-00150-EPB    Doc 33    Filed 01/12/22    Entered 01/12/22 14:37:20    Desc
Main Document    Page 2 of 12

C. Debtor does not have sufficient available sources of working capital and financing to carry on the operation of the Estate's business without the DIP Facility. The ability of Debtor to pay employees, maintain business relationships with vendors and suppliers is essential to the continued viability of the businesses.

D. In addition, Debtor's critical need for use of cash collateral, factoring and financing is immediate. Without the use of cash collateral and approval of the DIP Facility, the continued operation of Debtor's business would not be possible, and serious and irreparable harm to the Estate and its creditors would occur.

E. To the extent any Prepetition Lien Creditors have an interest in Debtor's cash collateral, they have either consented to Debtor's use of cash collateral or are otherwise adequately protected by the ongoing payments proposed under the Budget and the continuation of Debtor's business operations and the preservation of the going concern value of Debtor's assets.

F. Debtor is unable to sustain its business with only the use of cash collateral and is unable to obtain unsecured credit allowable under Bankruptcy Code §503(b)(1) as an administrative expense. Debtor is unable to obtain the needed post-petition financing on terms more favorable than those of the DIP Facility.

G. Based on the record before this Court, adequate notice for the interim relief requested in the Motion has been given pursuant to Bankruptcy Code §§102(1) and 364(c), and Bankruptcy Rules 2002 and 4001(c).

H. Based on the record before this Court, it appears that the DIP Facility has been negotiated in good faith and at arms-length between Debtor and DIP Lender, and any sales of receivables, credit extended, and loans made pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code §§ 363(m) and 364(e) and DIP Lender is entitled to the protections of Bankruptcy Code §§ 363(m) and 364(e).

I. Based on the record before this Court, it appears that the terms of the DIP Facility are fair and reasonable, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

J. **Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).** The permission granted herein to enter into the DIP Facility and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Estate. This Court concludes that entry of this Order is in the best interests of the Estate and its creditors because its implementation, among other things, will allow for the availability to Debtor of working capital which is necessary to sustain the operations of Debtor's existing business.

K. Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes legal conclusions.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1. The Motion is granted on an *interim basis*, subject to the terms and conditions set forth in this Order. All objections to the entry of this Interim Order have either been resolved as stated on the record at the Preliminary Hearing, or shall be, and hereby are, overruled. This Order does not affect the right of any party to object to Debtor's request for entry of a Final Order, provided that, as to advances made by DIP Lender under the DIP Facility between the Preliminary Hearing and Final Hearing, the Final Order shall not disturb the super-priority treatment of the advances nor the priority of DIP Lender's liens securing the same as set forth in paragraphs 13-16 of this Order.

2. Debtor may use cash collateral only as provided in this Interim Order.

3. Debtor's use of Cash Collateral is limited to payment of ordinary and necessary expenditures exemplified in the Budget attached hereto as **Exhibit 2**. The authorization granted to Debtor to use cash collateral under this Interim Order will terminate upon the conclusion of

4

the Final Hearing, unless otherwise extended by Court order or agreement of all creditors claiming an interest in Debtor's cash collateral.

4. The execution and delivery of the DIP Loan Documents by Debtor is hereby authorized and approved.

5. Debtor is authorized and empowered to execute and deliver to DIP Lender any other document of any kind required to be executed and delivered in connection with the DIP Facility, including final DIP Facility loan documents and security agreements (collectively, the Final DIP Facility Agreements"), subject to approval by the Final Order.

6. Drafts of the proposed Final DIP Facility Agreements shall be filed with the court at least five (5) days prior to the date of the Final Hearing.

7. Debtor is authorized and obligated to comply with and perform all of the terms and conditions contained in the DIP Loan Documents and this Order and repay amounts owing, with interest and any other charges, to DIP Lender in accordance with and subject to the terms and conditions set forth in the DIP Loan Documents and this Order.

8. Upon entry and subject to the terms of the Final Order, Debtor is further authorized and obligated to pay all fees and expenses, including, without limitation, all fees set forth in the DIP Loan Documents and all reasonable fees and expenses of professionals engaged by DIP Lender in accordance with the terms of the DIP Loan Documents.

9. All advances under the DIP Facility made pursuant to the DIP Loan Documents and this Order, and interest thereon, and all fees, costs, expenses, indebtedness, obligations and liabilities of the Estate to DIP Lender under the DIP Loan Documents and this Order constitute claims and are referred to herein as Super-Priority Claims. The Super-Priority Claims are defined herein as the "**Obligations**".

10. Debtor is authorized to obtain funding from DIP Lender, on the terms and subject to the conditions set forth in the DIP Loan Documents as modified by this Order, an amount up to $330,255.64 pursuant to this Interim Order and up to a total principal amount of $2.5 million of upon entry of the Final Order.

a. Collectively, all DIP Loan advances, all of the Estate's business revenues collected, and all other cash or cash proceeds of Collateral held by the Debtor at any time will be referred to as the "**Estate Funds**." The Debtor are authorized to use the Estate Funds only to pay ordinary and necessary operating expenses for the Estates' businesses as set forth in a budget prepared by the Debtor and approved by DIP Lender (the "**Budget**"), and such other expenses consented to in writing by DIP Lender. A copy of the initial Budget is attached hereto as **Exhibit 2**.

11. Debtor shall promptly deposit, sequester and segregate all Estate Funds the Estate holds or receives in one or more Estate cash collateral accounts (collectively, the "**Cash Collateral Accounts**") established by the Debtor at a financial institution acceptable to DIP Lender and the Office of the United States Trustee (the "UST"). The Cash Collateral Accounts or any Controlled Account (as defined in the DIP Loan Documents) shall be established at authorized depository institutions from the list of approved institutions maintained by the UST. All funds in the Cash Collateral Account shall be deemed to be Collateral securing the Obligations. Debtor may use Estate Funds in the Cash Collateral Account only in accordance with the terms and conditions stated in this Order.

12. Repayment of the DIP Facility shall be according to the following terms:
    a. Factoring Facility: Payments on the factoring facility will be made in the ordinary course as collected or otherwise swept from Debtor's Cash Collateral Accounts upon payment by the account debtor. All fees accrued with respect to each factored invoice will be collected and applied and the net shall be released to Debtor at least twice each month as set forth in the DIP Loan Documents.
    b. Inventory Facility: Interest only payments on the Inventory Facility will be made on a monthly basis by Debtor and may be paid from net receipts otherwise due to Debtor under the Factoring Facility.

6

Case 2:22-bk-00150-EPB    Doc 33    Filed 01/12/22    Entered 01/12/22 14:37:20    Desc
Main Document    Page 6 of 12

13. In accordance with Bankruptcy Code §§364(c)(1) and 507(b), the Obligations, shall constitute claims (the "**Super-Priority Claims**") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 546(c), and subject only to the Carve-Out (defined in paragraph 16 below), shall at all times be senior to the rights of Debtor, the Estate, any or other Estate representative appointed in the Case, or any other administrative creditor in the Case. No cost or expense of administration under Bankruptcy Code §§105, 364(c)(1), 503(b), 506(c), 507(b) or otherwise, shall be senior to, equal to, or *pari passu* with, the Super-Priority Claims of DIP Lender arising out of the Obligations, subject only to the Carve-Out (defined in paragraph 16 below).

14. As security for the Obligations, DIP Lender shall have and is hereby granted (effective and continuing without the necessity of the execution, filing and/or recordation of mortgages, security agreements, control agreements, patent security agreements, trademarks security agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests and liens (the "**Liens**") in all present and after-acquired personal and real property of the Debtor and its Estates (collectively, the "**Collateral**"). The Collateral does not include any avoidance actions arising under Chapter 5 of the Bankruptcy Code, except for Bankruptcy Code section 549 causes of action, but expressly includes all causes of action held by Debtor prepetition other than those claims, rights, causes of actions, affirmative defenses and other rights arising with respect to the claims in the Michelin Litigation and proceeds therefrom.

15. The Liens in the Collateral held by or granted to DIP Lender as security for the Obligations shall have the following priority:

> (a) DIP Lender's Liens in all Collateral arising from and after the Petition Date, including without limitation all accounts generated from and after the Petition Date, all Estate Funds received by Debtor (or any trustee) on or after the Petition Date, and all inventory of Debtor existing as of or

acquired on or after the Petition Date, shall be first priority, senior, perfected Liens securing the full amount of the Obligations;

(b) DIP Lender's Liens in the Collateral that is not otherwise encumbered by a valid and perfected, non-avoidable security interest or lien prior and superior to the liens and security interests held by DIP Lender shall be first priority, senior, perfected Liens securing the full amount of the Obligations, except that DIP Lender is hereby granted a first priority priming lien as to statutory, filed, and all other liens and claims of Debtor's Prepetition Lien Creditors other than with respect to the timely and properly perfected first priority liens of the Equipment Lenders as to the Equipment Collateral. DIP Lender's Liens on the Equipment Collateral shall be junior to those of the Equipment Lenders.

16. The Liens and Super-Priority Claims granted to DIP Lender pursuant to this Order shall be subject only to the following (collectively, the "**Carve-Out**"):

(a) A limited carve-out from the Collateral is established for the payment of allowed professional fees and disbursements by the professionals retained, pursuant to Bankruptcy Code §§ 327 or 1103(a) by the Debtor, only with respect to and up to the amount of such professionals' pre-petition retainers, and any unpaid fees of the United States Trustee, only in such amounts and pursuant to the timing set forth in the Budget (subject to approval of future budgets) (collectively, the "**Professional Fees**").

(b) The Carve-Out will not be available if and to the extent that the Estates have other unencumbered or less than fully encumbered assets available to pay Professional Fees.

(c) None of the Loans or other Estate Funds and none of the cash collateral subject to liens or security interests in favor of DIP Lender (notwithstanding the Carve-Out) may be used to fund any action (as opposed to investigatory efforts) to: (i) object to or contest in any manner, or raise any defenses to the validity, perfection, priority or enforceability of the Obligations owing to DIP Lender, or the Liens in favor of DIP Lender securing such Obligations; or (ii) assert any claims or causes of action against DIP Lender or its attorneys of any type, including, without limitation, any avoidance actions under Chapter 5 of the Bankruptcy Code, or any claim or cause of action against DIP Lender in its capacity as lender under the DIP Facility or otherwise.

17. No person will be permitted to surcharge the Collateral under Bankruptcy Code § 506(c) or to obtain a lien with respect to the Collateral which is equal or senior to the Liens of DIP Lender on the Collateral.

18. Debtor has waived and released, and are barred from asserting, a claim under Bankruptcy Code § 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by DIP Lender upon, the Collateral. DIP Lender will not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral. Upon entry of the Final Order, the post-petition Liens granted to DIP Lender on the Collateral by virtue of this Order will be (and hereby are) adjudicated valid, and perfected as against all third parties, without regard to applicable federal, state, or local filing or recording statutes, *nunc pro tunc* as of the Petition Date, and without further action of any party, including DIP Lender; provided, that DIP Lender may, but need not, take such steps as it deems desirable and applicable to comply with such statutes, and all financing statements which are filed listing Debtor as debtor and DIP Lender as secured party, all mortgages or similar instruments which are filed granting to DIP Lender post-petition liens upon and security interests in Collateral shall be deemed to have been filed and the security interest and liens evidenced thereby will be deemed perfected *nunc pro tunc* as of the Petition Date.

19. Upon entry of the Final Order, Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the DIP Facility Agreements, as DIP Lender may reasonably require, as evidence of and for the protection of the Obligations, or which otherwise may be deemed reasonably necessary by DIP Lender to effectuate the terms and conditions of the Final Order and the DIP Facility Agreements. The Final Order may provide that the Debtor and DIP Lender are hereby authorized to implement any non-material modifications of the DIP Facility Agreements without further order of this Court.

20. Without limiting the rights of access and information afforded DIP Lender under the DIP Loan Documents, Debtor shall afford representatives, agents and/or employees of DIP Lender access to Debtor's premises and records and shall cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement, as they may reasonably request. Debtor shall also provide to DIP Lender, at the time filed or provided, all statements, schedules or financial reports that Debtor files in the Case or provides to UST in accordance with applicable rules or guidelines of the UST.

21. Based on the record presented, this Court has found that DIP Lender is extending credit, purchasing accounts, and making Loans to the Estate in good faith. Accordingly, DIP Lender is entitled to the full protection of Bankruptcy Code §§ 363(m) and 364(e) with respect to the Obligations and the Liens created, adjudicated or authorized by this Order in the event that this Order or any finding, adjudication, or authorization contained herein is reversed or modified on appeal.

22. The Super-Priority Claims and Liens shall maintain their priority as provided by this Order until all of the Obligations are paid indefeasibly and in full.

23. Notwithstanding anything else in this Order, DIP Lender's interests in accounts receivable factored for Debtor under its prepetition financing arrangements shall retain the characterization as factored accounts held by FSW outside of the bankruptcy estate, including, without limitation all accounts receivable factored by DIP Lender prepetition for Aldi. In the event that Debtor receives payment from Aldi (or any other account debtor) on account of accounts receivable factored by DIP Lender prepetition, such funds shall not be used by Debtor for any purposes and shall be transferred to DIP Lender promptly upon their receipt for administration under the prepetition financing documents. Furthermore, such prepetition funds, being in the nature of factoring, are not property of the estate nor subject to the automatic stay of Bankruptcy Code § 362(a), and can be administered in the ordinary course pursuant to the terms of the prepetition financing arrangements between DIP Lender and Debtor.

24. DIP Lender shall be deemed to be a party-in-interest for all purposes in the Case with the right and opportunity to appear and be heard on all matters arising in the Case, including, without limitation, (i) the employment and payment of professionals by Debtor or the Estate, (ii) the sale of any Estate property, (iii) any plan of reorganization proposed in the Case, and (iv) any proposed conversion or dismissal of the Case.

25. The provisions of this Order shall be binding upon and inure to the benefit of DIP Lender, Debtor (and its Estate), and their respective successors and assigns, including any trustee or fiduciary hereafter appointed in the Case as a legal representative of the Estate. References to "Debtor" or the "Estate" in this Order shall include Debtor, the Estate, and any and all subsequently appointed trustee or other Estate representative.

26. If there is any conflict between the terms of the DIP Loan Documents and/or the DIP Facility Agreements on the one hand and the provisions of this Order on the other hand, the provisions of this Order shall control.

27. Within three (3) business days of entry of this Order, Debtor shall mail a copy of this Order, and a Notice of the Final Hearing in a form acceptable to Debtor and DIP Lender (the "**Notice**") to the UST, all creditors (including, without limitation, the IRS and other taxing authorities) known to Debtor who may have or assert liens, security interests or other charges or interests against the Estate's assets, to all of the Estate's landlords, mortgagees and secured creditors, to the twenty (20) largest unsecured creditors in each of the Bankruptcy Cases, to any other party or counsel that has filed a request for notices with this Court, and to counsel for any statutory committee of unsecured creditors appointed pursuant to Bankruptcy Code § 1102.

28. **Any party in interest objecting to the Court's entry of a Final Order as requested by Debtor shall file a written objection with the United States Bankruptcy Court Clerk by 5:00 p.m. MST on January 20, 2022,** which objection shall be served so that it is received by the Court, the UST, counsel to Debtor, and counsel to DIP Lender on or before such date and time.

29. A Final Hearing to consider the Motion will be held before the Court on January 21, 2022 at 10 a.m.

30. The Court has and will retain jurisdiction to enforce this Order according to its terms.

**DATED AND SIGNED ABOVE**