**Quarles & Brady LLP**
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200

Attorneys for NFS Leasing, Inc.

Gabriel M. Hartsell (#036494)
Gabriel.Hartsell@quarles.com

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>GPMI, CO., an Arizona corporation,<br><br>Debtor. | In Proceedings Under Chapter 11<br><br>Case No. 2:22-bk-00150-EPB |

**OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) OBTAIN POST-PETITION FACTORING AND FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF (Doc. No. 6)**

Creditor, NFS Leasing, Inc. ("NFS"), by and through undersigned counsel, hereby objects to the Debtor's Emergency Motion For Entry Of Interim And Final Orders (I) Authorizing Debtor To (A) Obtain Post-Petition Factoring And Financing And (B) Utilize Cash Collateral, (II) Granting Liens And Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Scheduling A Final Hearing, And (V) Granting Related Relief ("DIP Motion") (Doc. No. 6), and in support thereof, states as follows:

**I.    Background**

1.    On January 10, 2022, Debtor filed its DIP Motion seeking, among other things, entry of an interim and final order to obtain secured post-petition financing from

FSW Funding ("**FSW**") as lead lender (the "DIP Lender"). Doc. No. 6.

2. The terms of the lending provide that the DIP Lender will provide a senior secured and junior secured (with respect to certain Prepetition Preserved Collateral as defined below) super-priority debtor-in possession credit facility in an aggregate principal amount not to exceed $2.5 million comprised of an accounts receivable factoring facility (the "A/R Facility") of up to $2.0 million (the "Factoring Commitment"), and an inventory credit facility (the "Inventory Facility") of up to $500,000 (the "Inventory Commitment"). DIP Motion at 2.

3. Further, Debtor seeks to provide the DIP Lender (1) a first priority position lien and security interest in substantially all of Debtor's unencumbered assets ("DIP Collateral"), (2) a junior priority lien on all of Debtor's other assets (primarily Debtor's leased equipment) ("Prepetition Preserved Collateral") that remain subject to outstanding obligations to creditors who have recorded UCC-1 Financing Statements and assert liens on certain equipment Collateral (the "Equipment Lien Creditors"), as well as creditors that have filed UCC-1s asserting blanket security interests in all of Debtor's assets (the "Blanket Lien Creditors," and together with the Equipment Lien Creditors, the "Prepetition Lien Creditors"), and (3) super-priority administrative expense status, with respect to the obligations under such post-petition financing, with priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b), 507(b) and 546(c), except for the carve-out for Debtor's professionals (the "Carve-Out"). *Id.*

4. The junior lien envisioned by the DIP Motion on the Prepetition Preserved Collateral, appears to recognize the superior rights of a secured creditor or lessor of the Debtor, but limits that recognition to whatever specific piece of equipment or collateral is the subject of the secured creditor or lessor's business arrangement with the Debtor.

5. On January 12, 2022, the Court entered an Interim Order authorizing certain secured post-petition financing for the Debtor and setting a final hearing on the DIP Motion for January 21, 2022.

**II.     NFS' Business Relationship with Debtor**

6. NFS entered into that certain Master Equipment Lease , (as amended from time to time, the "Master Lease") with Debtor effective on July 16, 2020, for the lease of certain equipment as described in various equipment lease Schedules (each an "Equipment Schedule" and collectively the "Equipment Schedules") executed from time to time pursuant to the Master Lease. *See* Master Equipment Lease Number 2020-0244 attached and incorporated hereto as **Exhibit "A"**.

7. The Master Lease provides that all equipment leased to Debtor, "shall at all times remain the personal property of [NFS]. [Debtor] shall have no right, title, or interest in the Equipment except as provided for [in the Master Lease]." Master Lease at 1.2.

8. The Master Lease further provides, "that if for any reason this Master Lease and/or any Schedule is determined to be other than a true lease under the UCC, [Debtor] hereby grants to [NFS] a first priority security interest in the Equipment and all proceeds attributable thereto to secure payment of all sums due and to become due under this Master Lease and/or any Schedule, including without limitation, all Rent and Impositions." Master Lease at 24.2.

9. The Debtor and NFS then executed seven (7) separate Equipment Schedules under the Master Lease in connection with the leasing of certain manufacturing equipment to the Debtor (the "Leased Equipment"). Under each Equipment Schedule, the Debtor's end of lease options as to the Leased Equipment were to either, (1) purchase the Leased Equipment for its fair market value, (2) return the Leased Equipment to NFS, or (3) for monthly rental payments under the Equipment Schedule to be extended on a month-to-month basis.

10. NFS is the owner of all of the Leased Equipment that is subject to the Master Lease and related Equipment Schedules.

11. Further, and only to the extent that the Master Lease and/or any Equipment Schedule is determined to be other than a true lease under the UCC, which NFS explicitly denies, NFS holds a perfected first priority security interest in all Leased Equipment pursuant to the Master Lease, the Equipment Schedules, and any corresponding UCC-1 Financing statements in NFS' favor recorded with the Arizona Secretary of State.

12. The Debtor's DIP Motion improperly characterizes NFS' Leased Equipment, which is wholly owned by NFS and leased to the Debtor, as instead being property of Debtor, in which NFS holds a first priority security interest. Debtor then seeks to provide the DIP Lender a junior lien interest in the Leased Equipment by including it as part of the Prepetition Preserved Collateral as defined in the DIP Motion. DIP Motion at 10.

13. NFS objects to providing any interest to the DIP Lender in the Leased Equipment that is NFS' personal property, and not the property of the Debtor or the Debtor's Bankruptcy Estate.

14. However, if, for any reason the Master Lease and/or Equipment Schedules are determined not to be true leases, NFS would have a first priority security interest in the Leased Equipment, and as such, further maintains its right to keep such first priority lien on any specific Leased Equipment, as Debtor has proposed in its DIP Motion.

15. As to DIP Lender's requested superpriority priming lien, NFS has no objection to this request, provided that no lien interests are created in favor of the DIP Lender in NFS' Leased Equipment.

16. To the extent which NFS has a security interest in other assets of the Debtor, the DIP Lender may only prime NFS' lien on the Debtor's assets, if it demonstrates that NFS' interest will still be adequately protected, despite losing its lien position on the

Debtor's remaining assets. *See* 11 U.S.C. § 364(d)(1)(B). By ensuring that no interest is created in NFS' Leased Equipment, or to the extent any of the Leased Equipment is later determined to be Debtor's property or property of the estate, only providing the DIP Lender a junior priority interest to NFS, NFS' interest will be adequately protected.

WHEREFORE, NFS respectfully requests that the Court deny the Debtor's DIP Motion to the extent it seeks to provide the DIP Lender any lien rights or interest in NFS' Leased Equipment, and to the extent that any of the Leased Equipment is later determined to be Debtor's property or property of the estate, that any final order granting the DIP Motion only provides the DIP Lender a junior lien on the Leased Equipment as envisioned by the DIP Motion, and to grant NFS any other and further relief this Court deems necessary.

DATED this 20th day of January, 2022.

QUARLES & BRADY LLP

By */s/ Gabriel M. Hartsell*
Gabriel M. Hartsell

*Attorneys for NFS Leasing, Inc.*

The foregoing was filed using the Court's
CM/ECF system, which served copies on
the CM/ECF participants, and copies were also
sent via e-mail and/or mail this 20th day of
January, 2022, to:

Steven N. Berger
ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
snb@eblawyers.com
*Attorneys for Debtor*

1    Larry L. Watson
     OFFICE OF THE U.S. TRUSTEE
2    230 North First Avenue, Suite 204
     PHOENIX, AZ 85003-1706
3    larry.watson@usdoj.gov
     USTPRegion14.PX.ECF@USDOJ.GOV
4    *Attorneys for U.S. Trustee*

5    Alan A. Meda
     BURCH & CRACCHIOLO PA
6    1850 N. Central Ave., Suite 1700
     Phoenix, AZ 85004
7    ameda@bcattorneys.com
     *Attorneys for Factors Southwest, LLC*
8    *aka FSW Funding*

9    Andrew A. Harnisch
     Grant L. Cartwright
10   Eric W. Moats
     MAY, POTENZA, BARAN & GILLESPIE, P.C.
11   1850 N. Central Avenue, Suite 1600
     Phoenix, AZ 85004-4633
12   aharnisch@maypotenza.com
     gcartwright@maypotenza.com
13   emoats@paymotenza.com
     *Attorneys for Factors Southwest, LLC*
14   *aka FSW Funding*

15   Andy Abraham
     BURCH & CRACCHIOLO, PA
16   *Counsel for Lancelot Holdings, LLC*
     aabraham@bcattorneys.com

17

18
     */s/Lizzie Norman* _____
19

20

21

22

23

24

25

26

Case 2:22-bk-00150-EPB    Doc 47    Filed 01/20/22    Entered 01/20/22 11:57:13    Desc
QB\72114989.1
                 Main Document     Page 6 of 6