SO ORDERED.

Dated: November 24, 2022

Eddward P. Ballinger Jr., Chief Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>GPMI CO.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:22-bk-00150-EPB<br><br>**ORDER APPROVING STIPULATION REGARDING (I) TREATMENT OF NFS LEASING, INC.'S CLAIMS AND LEASED EQUIPMENT, AND (II) RELATED RELIEF** |

This matter comes before the Court pursuant to the "*Joint Motion for Entry of Approval Order Regarding (I) Treatment of NFS Leasing, Inc.'s Claims, and Leased Equipment, and (II) Related Relief*" (the "**Motion**") filed by GPMI CO., the debtor and debtor-in-possession in the above-captioned Chapter 11 Bankruptcy Case (the "**Debtor**"), the OFFICIAL UNSECURED CREDITOR'S COMMITTEE (the "**Committee**"), and NFS LEASING, INC. a creditor and party-in-interest in the Bankruptcy Case ("**NFS**," and together with the Debtor, and the Committee the "**Movants**" or the "**Parties**"). In the Motion, the Movants request the Court to enter an order approving the *Stipulation Regarding (I) Treatment of NFS Leasing Inc.'s Claims and Leased Equipment, and (II) Related Relief* (the "**Agreement**") by and between the Debtor, the Committee, and NFS. A

complete and authentic copy of the Agreement is attached to this Order as **Exhibit "A"** and is incorporated into this Order by this reference. The purpose of the Agreement is to settle and resolve all claims, defenses, causes of action, and obligations between the Parties, arising from or related to the Lease between the Debtor and NFS, and to memorialize treatment of NFS's claims and leased equipment for purposes of any plan of reorganization that may be pursued by the Debtor, including, without limitation, the Plan.[1]

Based upon the entire record before the Court, and for good cause appearing therefore, the Court FINDS and CONCLUDES as follows:

1. This Court has jurisdiction over the Bankruptcy Case, the Motion, and the Agreement under 28 U.S.C. §§ 157(b) and 1334. The Motion and the Agreement present a core proceeding as defined in 28 U.S.C. § 157(b).

2. The Movants provided sufficient and proper notice of the Motion to all parties-in-interest, under the circumstances of this Bankruptcy Case.

3. NFS is the current lessor pursuant to the Lease and is entitled to enforce the terms and provisions thereunder.

4. The Debtor, as lessee, is obligated to NFS, as lessor, under the Lease, and NFS holds a valid Administrative Claim for the deferred Lease payments pursuant to § 365(d)(5) of the Bankruptcy Code.

5. The Agreement and entry of this Order will facilitate the Debtor's successful reorganization.

6. The terms and conditions expressed by the Agreement are fair and reasonable, were negotiated by the Parties in good faith at arm's length, and the Parties otherwise acted in good faith.

7. The Agreement and entry of this Order is in the best interest of

---

[1] Unless otherwise defined, all capitalized terms used in this Order will have the same meaning given to them in the Agreement.

creditors and the bankruptcy estate.

**IT IS ORDERED, ADJUDGED, AND DECREED** as follows:

    A.    The Motion is granted in its entirety.

    B.    The Agreement is approved in its entirety.

    C.    All of the terms of the Agreement are deemed to be part of this Order, are effective as if stated herein, and are incorporated herein by this reference; the terms of the Agreement will be deemed a finding of fact if and to the full extent that the Agreement makes and contains factual statements, and a conclusion of law if and to the full extent that the Agreement makes legal conclusions or imposes duties and obligations on any person; the Parties are directed to immediately perform all of their respective duties and obligations as set forth in the Agreement without further order of this Court.

    D.    This Court retains jurisdiction to enforce and implement the terms and provisions of the Agreement and this Order.

**DATED AND SIGNED AS INDICATED ABOVE**

# Exhibit "A"

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>GPMI CO.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:22-bk-00150-EPB<br><br>**STIPULATION REGARDING (I) TREATMENT OF NFS LEASING, INC.'S CLAIMS AND LEASED EQUIPMENT, AND (II) RELATED RELIEF** |

This Stipulation (the "**Agreement**") is entered into by and among GPMI CO., the Debtor and debtor-in-possession (the "**Debtor**") in the above captioned Chapter 11 bankruptcy case (the "**Bankruptcy Case**"), the OFFICIAL UNSECURED CREDITOR'S COMMITTEE appointed in this Bankruptcy Case (the "**Committee**"), and NFS LEASING, INC., a creditor and party in interest in the Bankruptcy Case ("**NFS**," and together with the Debtor and the Committee, the "**Parties**"). The purpose of this Agreement is to fully settle and resolve all claims, defenses, causes of action, and obligations between the Parties, arising from or related to the Lease (defined below) between the Debtor and NFS, and to memorialize treatment of NFS's claims and equipment for purposes of any plan of reorganization that may be pursued by the Debtor, including, without limitation,

the *Debtor's Second Amended Plan of Reorganization, Dated October 31, 2022,* [Dkt. No. 340] (as may be further amended, modified, or replaced from time to time, the "**Plan**").

Accordingly, the Parties hereby STIPULATE and AGREE as follows:

**I.   RECITALS**.

1.   On January 10, 2022 (the "**Petition Date**"), the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the Bankruptcy Case. Since the Petition Date, the Debtor has continued in possession of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

**Brief Factual Background**

2.   The Debtor manufactures wet wipes for the cleaning and automotive industries.

3.   NFS is in the business of providing equipment leasing and financing to established and emerging businesses throughout the United States and Canada.

4.   On or around July 16, 2020, the Debtor and NFS entered into a *Master Equipment Lease Number 2020-0244* with NFS as the lessor and the Debtor as lessee (together with all schedules thereto as each may be amended, restated, or otherwise modified, the "**Lease**"). A true and correct copy of the Lease is attached to NFS's Proof of Claim (Claim No. 50-1).

5.   As set forth in the Lease, and as further identified in Schedule 1, Schedule 2, Schedule 3, Schedule 4, Schedule 5, Schedule 6 and Schedule 7 to the Lease, the Debtor leased certain manufacturing equipment from NFS (together, the "**Leased Equipment**").

6.   Pursuant to the Lease, the Debtor's monthly lease payments owing to NFS under all of the Schedules to the Lease are in the amount of $122,955.00.

7.   Prepetition, the Debtor defaulted under the terms of the Lease by, including

without limitation, failing to pay all amounts due and owing under the Lease.

8. Since the Petition Date, the Debtor has been making partial monthly lease payments to NFS in the amount of $36,309.74. NFS has not agreed to any reduced payment, and it has received all partial payments under a reservation of rights. The unpaid post-petition lease payment amounts are part of NFS's administrative claim, and as of November 1, 2022, the amount of such administrative claim was at least $1,002,678.80, exclusive of any Catch-Up Payment (defined below) (the "**Administrative Claim**"). *See* 11 U.S.C. § 365(d)(5).

## Plan of Reorganization

9. The Debtor is presently seeking confirmation of the Plan (as defined above).

10. The Plan constitutes a "Qualifying Plan" as defined herein. In the event the Plan is materially modified without the consent of NFS, NFS reserves all rights to assert that the Plan (as then modified) no longer meets the definition of a Qualifying Plan hereunder and that such modification constitutes a default under the terms of this Agreement.

11. Regardless of the specific reorganization plan pursued by the Debtor, the Debtor agrees that the continued and future use and operation of the Leased Equipment is critical to the success of the Debtor and the confirmation of a Qualifying Plan.

12. This Agreement describes the manner in which NFS's Administrative Claim, the Lease, the Leased Equipment, the Lease Rejection Claim (all as defined below) and any other claims NFS may hold or assert will be treated under any plan and in the Debtor's bankruptcy case, and must be incorporated by reference in any Qualifying Plan.

## Acknowledgements

13. The Parties acknowledge and agree that the terms and conditions encompassed by this Agreement are fair and reasonable and were negotiated by the Parties in good faith

at arm's length.

14. The Parties acknowledge and agree that this Agreement is in the best interest of creditors and the Debtor's bankruptcy estate, and that this Agreement will facilitate confirmation of a plan.

**II. OPERATIVE PROVISIONS.**

A. **Recitals**. The "Recitals" section of this Agreement is hereby incorporated into the "Operative Provisions" section of this Agreement, without distinction between the two sections.

B. **Approval Order**. Upon entry of an order approving this Agreement (the "**Approval Order**"), a form of which is attached hereto as **Exhibit 1**, this Agreement and the Approval Order will govern all issues between the Parties arising from or related to this Agreement.

C. **Select Definitions**. As used in this Agreement, the terms below will be defined as follows:

1. "**Effective Date**" means the date on which an order confirming a Qualifying Plan is entered by the Bankruptcy Court and all other conditions to the occurrence of the effective date under a Qualifying Plan have been satisfied or waived, and NFS has the Indefeasible Receipt (defined below) of the Release Amount due hereunder.

2. "**Qualifying Plan**" means a plan, including the Plan dated October 31, 2022, that has been approved by NFS and which fully and fairly incorporates this Agreement as treatment for NFS's claims against the Debtor.

3. "**Confirmation Deadline**" means January 31, 2023.

4. "**Indefeasible Receipt**" or "**Indefeasibly Received**" means a payment in good and readily available funds received pursuant to this Agreement or a confirmed

Qualifying Plan which funds are not the subject of any demand or other action for repayment or disgorgement from NFS.

**D.     Pursuit of Qualifying Plan**. The Debtor agrees to make all reasonable efforts to confirm a Qualifying Plan on or before the Confirmation Deadline.

**E.     Catch-Up Payment**. The Debtor will pay NFS the amount of $72,619.48 (the "**Catch-Up Payment**"). The Catch-Up Payment represents two unpaid $36,309.74 partial lease payments the Debtor desires to pay NFS for the months of October 2022 and November 2022. The Catch-Up Payment will be paid by the Debtor as follows:

1. In the event the Effective Date occurs *on or before* November 21, 2022, the Debtor will make a lump sum payment in the full amount of the Catch-Up Payment on or before the Effective Date.

2. In the event the Effective Date occurs *after* November 21, 2022, the Debtor will make the Catch-Up Payment in two equal payments of $36,309.74. The first payment will be due on November 21, 2022 and the second payment will be due on November 30, 2022.

**F.     Partial Lease Payments**. Unless the Effective Date of a Qualifying Plan has previously occurred, then commencing on December 1, 2022 and continuing on the same day of each month thereafter until the earlier to occur of (1) an Event of Default under this Agreement, or (2) NFS's Indefeasible Receipt of the Release Amount (defined below), the Debtor will make partial lease payments of $36,309.74 per month (the "**Partial Lease Payments**"). Unless NFS has Indefeasibly Received the full Release Amount, upon an Event of Default under this Agreement, the Debtor will be obligated to pay the full lease payments and any other amounts due under the Lease. NFS's acceptance and application of the Catch-Up Payment or the Partial Lease Payments are made without waiving NFS's

rights to demand full lease payments upon an Event of Default or in the event that this Agreement is not approved by the Court.

**G. Administrative Claim**. Subject to Section H below, the Parties agree that under 11 U.S.C. § 365(d)(5), NFS holds an Administrative Claim ("**Administrative Claim**") in an amount not less than $1,002,678.80 through November 1, 2022, which claim will continue to increase for each month that the full lease payments are not made until the occurrence of the Effective Date of a Qualifying Plan.

**H. Settlement**. In consideration of the compromises and concessions made by NFS herein, on the Effective Date of a Qualifying Plan:

1. **Settlement Payment:** The Debtor will pay NFS a lump sum, cash payment (from the source of funds specified in a Qualifying Plan) in the amount of $1,375,000.00, plus any and all applicable tax, which shall be added to the total settlement payment (collectively, the "**Settlement Payment**").

2. **Lease Rejection Claim**. The Lease will be rejected under any Qualifying Plan, and, after accounting for the application of the Letter of Credit (defined below) amount and any and all security deposits held and/or applied by NFS, NFS will hold a total allowed unsecured claim for lease rejection damages in an agreed amount of $2,100,000.00 ("**Lease Rejection Claim**"). The Lease Rejection Claim will be deemed allowed and treated as a General Unsecured Claim under a Qualifying Plan.

3. **Administrative Claim**. Upon NFS's Indefeasible Receipt of the Release Amount (defined below) and so long as no Event of Default occurs under this Agreement, on the Effective Date of a Qualifying Plan, NFS will be deemed to fully and finally waive its Administrative Claim.

4. **Equipment Transfer**. So long as no default or Event of Default under this

Agreement has occurred, upon the Effective Date of a Qualifying Plan and NFS' timely and Indefeasible Receipt in full of the Settlement Payment, the Catch-Up Payment, all Partial Lease Payments due and owing, and any other amounts due NFS under this Agreement on the Effective Date (collectively, the "**Release Amount**"), the Debtor, Reorganized Debtor, or assignee, shall automatically take full title to and ownership of the Leased Equipment. An order confirming a Qualifying Plan will be sufficient to evidence such title transfer. The Leased Equipment will be transferred "AS IS", "WHERE IS" and "WITH ALL FAULTS" and any known or unknown defects shall be the sole liability of the Debtor or its assignee. NFS does not warrant the Leased Equipment in any respect, either expressly or by implication, and without limiting the generality of the foregoing, NFS expressly disclaims any implied warranty of merchantability, fitness or adequacy for any purpose or use, quality, productiveness or capacity of such Leased Equipment.

5. **UCC-3 Termination Statement**. So long as no default or Event of Default has occurred under this Agreement and upon the Effective Date of a Qualifying Plan and NFS's timely and Indefeasible Receipt of the Release Amount in full, NFS will promptly file UCC-3 termination statements terminating any UCC-1's in connection with the Leased Equipment on file with the Arizona Secretary of State.

**I.** **Events of Default**. Any of the following events will constitute an "**Event of Default**" under this Agreement, without any notice required from NFS:

1. A confirmation order confirming a Qualifying Plan is not entered on or before the Confirmation Deadline;

2. The Debtor proposes any plan of reorganization that is not a Qualifying Plan;

3. The Bankruptcy Case is converted to a Chapter 7 case or dismissed, without NFS's written consent, which consent may be withheld in NFS' sole discretion;

4. The appointment of a trustee or an examiner under the Bankruptcy Code or any other type of fiduciary or custodian under federal or state law;

5. The Debtor ceases to operate its business without NFS's express written consent, which consent may be withheld in NFS' sole discretion;

6. The filing by the Debtor or any other party in interest of any motion which seeks to grant to a party other than NFS a lien or security interest in or on the Leased Equipment;

7. On or before the Effective Date of a Qualifying Plan, NFS has not Indefeasibly Received the full Release Amount; and/or

8. The Debtor fails to make any other payment when due hereunder or otherwise fails to comply with any other provision, term, or obligation of this Agreement.

**J.     Remedies.** Upon an Event of Default, NFS will have the following remedies:

1. <u>Events of Default Occurring Before the Effective Date</u>. If any default or Event of Default occurs prior to the Effective Date of a Qualifying Plan, then NFS will be entitled to, at its option, immediately file with the Bankruptcy Court a notice informing the Court that the Debtor has failed to comply with the terms of this Agreement (a "**Notice**"). If the Debtor has not fully cured or resolved each Event of Default to NFS's satisfaction within fifteen (15) calendar days from the date the Notice is filed, or NFS, in NFS's sole discretion, has not otherwise waived, in writing, any uncured Event of Default, in either case before the Effective Date of a Qualifying Plan, then each of the following will automatically occur, all without further order of the Court:

a.     The Lease will be deemed rejected;

b.     All applicable stays and injunctions, including, without limitation, the automatic stay of 11 U.S.C. § 362(a) will automatically terminate, vacate, and lift, such

that NFS may enforce all of its rights and remedies against or in connection with the Lease, the Leased Equipment and the Debtor, and the 14-day stay under Bankruptcy Rule 4001(a)(3) will be deemed waived. The Debtor will fully cooperate with NFS's removal of the Leased Equipment and/or, at NFS's option, NFS's sale or other liquidation of the Leased Equipment on site;

  c. Notwithstanding any administrative claim deadline, NFS may pursue its full Administrative Claim as an administrative claim, and any other claims NFS may have, and the Debtor agrees not to object to same;

  d. NFS will be entitled to assert a claim for all other damages (including rejection damages) and claims allowable under the Lease and applicable law;

  e. The Debtor stipulates that it will not seek to alter the treatment of NFS's claims, as provided herein, through any bankruptcy plan or otherwise, including, but not limited to, in any subsequent bankruptcy filings(s) or proceeding(s) filed by the Debtor except upon the prior written consent of NFS. NFS is entitled to withhold its consent to any proposed alteration of its treatment in its sole and absolute discretion and for any reason;

  f. To the extent any of the Debtor's plans fail to fully and fairly incorporate the terms of this Agreement or the Approval Order or are otherwise inconsistent with this Agreement or the Approval Order, the terms of this Agreement nevertheless control and are binding on the Debtor, including, but not limited to, in any subsequent bankruptcy filing(s) or proceeding(s);

  g. Notwithstanding any provision of any plan, treatment of NFS's claims and rights with respect to the Debtor will be governed in all respects by the terms and provisions of this Agreement and Approval Order;

h. To the extent any plan (or any plan filed in this or any subsequent bankruptcy case of Debtor) is inconsistent with or contradicts the terms of this Agreement or the Approval Order, in any respect, this Agreement and the Approval Order will control and supersede such plan; and

i. The terms of this Agreement and the Approval Order are the exclusive treatment for NFS in the case of the Debtor, including, without limitation, any plan or other agreement that may be confirmed, ordered or approved by the Court in the Bankruptcy Case. In any subsequent bankruptcy or insolvency proceedings of any kind that may be filed by or on behalf of the Debtor, and, in the event of any subsequent bankruptcy filing by or on behalf of the Debtor:

1) NFS will not be subject to the automatic stay (as set forth in § 362 of the Bankruptcy Code), or any other injunction in such proceedings or, alternatively, cause will conclusively be deemed to exist to lift any stay;

2) The Debtor is prohibited from altering, limiting, or otherwise modifying the treatment of any of NFS's claims as provided herein, through any bankruptcy plan or otherwise; and

3) The Debtor is prohibited from and otherwise waives any right to take any action to interfere with NFS's rights and remedies under this Agreement and Approval Order.

2. <u>Events of Default Occurring After the Effective Date</u>. If any default or Event of Default occurs after the Effective Date of a Qualifying Plan and after the Indefeasible Receipt of the Release Amount by NFS, then NFS will be entitled to, at its option, immediately file with the Bankruptcy Court a notice informing the Court that the Debtor has failed to comply with the terms of this Agreement (a "**Notice**"). If the Debtor has not

fully cured or resolved each Event of Default to NFS's satisfaction within fifteen (15) calendar days from the date the Notice is filed, or NFS, in NFS's sole discretion, has not otherwise waived, in writing, any uncured Event of Default, in either case on or after the Effective Date of a Qualifying Plan, then each of the following will automatically occur, all without further order of the Court:

    a. Notwithstanding any administrative claim deadline, NFS may pursue its full Administrative Claim as an administrative claim, and any other claims NFS may have, and the Debtor agrees not to object to same;

    b. NFS will be entitled to assert a claim for all other damages (including rejection damages) and claims allowable under the Lease and applicable law;

    c. In all other respects, the provisions of the confirmed Qualifying Plan governing the case shall control the rights of the parties hereto;

    d. NFS shall have no rights in the equipment comprising the Equipment Transfer, nor against any transferee of the subject equipment, which transfer shall be governed by the terms of the confirmed Qualifying Plan; and

    e. Upon Indefeasible Receipt of the Release Amount by NFS, NFS shall have no rights against the Reorganized Debtor on account of any breach of this Agreement or the Plan (currently being considered by the Court); provided, however, that this provision does not limit NFS's rights to payment from the Litigation Trust (as defined in the Plan) or its right to payment of the Lease Rejection Claim under any other Qualifying Plan.

## Other Terms And Conditions

**K.** **Letter of Credit**. For the avoidance of doubt, nothing in this Agreement shall affect NFS' ability to enforce or execute upon that certain Irrevocable Standby Letter

of Credit Reference No. NUSCGS034399 dated October 2, 2020 in the amount of $425,000.00 ("Letter of Credit"). NFS executed on the Letter of Credit on October 27, 2022.

**L.** **Vote for Plan**. So long as the Approval Order has been entered prior to confirmation of a Qualifying Plan, NFS agrees to vote its ballot to accept a Qualifying Plan and not object to its confirmation.

**M.** **Release of NFS**. Upon the earlier of the Effective Date or the Confirmation Deadline, the Debtor is deemed to have released and absolutely discharged NFS and each and all of NFS's predecessors, predecessors-in-interest, successors, assigns, present and former representatives, agents, employees, attorneys, shareholders, partners, affiliates, venturers, officers, directors and trustees (collectively as the "**NFS Parties**"), of and from any and all claims, demands, debts, payments, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions, and causes of action, of every kind and nature whatsoever, whether known or unknown, matured or unmatured, absolute or contingent (collectively as the "**Released Debtor Claims**"), which the Debtor (of its bankruptcy estate) may now have, own, or at any time heretofore have ever had, owned, or held against the NFS Parties, or any of them, including without limitation, any claims relating to the Lease, the Bankruptcy Case, or any matters relating thereto.

**N.** **No Other Agreements**. Each of the Parties confirms and agrees that they have executed this Agreement solely for the purpose stated herein, and not in reliance upon any other oral or written prior agreement, promise, representation, warranty, or any fact or belief as to any fact not expressly recited in this Agreement.

**O.** **Fully Integrated**. This Agreement, the Approval Order and the terms of the plan and confirmation order governing any confirmed Qualifying Plan, together represent

a fully integrated and complete agreement among the Parties and no other agreements whether they be by oral, written, or otherwise shall modify or affect the terms of this Agreement.

**P.     Time is of the Essence**. Time and strict performance are of the essence of this Agreement.

**Q.     Binding on Successors**. This Agreement, and all the terms and provisions hereof, will be binding upon and insure to the benefit of the Parties hereto and their respective heirs, assigns, and successors-in-interest of every kind, including without limitation any Chapter 11 or Chapter 7 trustee appointed in the Debtor's Bankruptcy Case, or any subsequent bankruptcy case by the Debtor (but not a subsequent bankruptcy case by the Reorganized Debtor under a Qualifying Plan).

**R.     No Prejudice**. This Agreement is without prejudice to any rights of the Parties not expressly addressed herein or otherwise controlled by the terms of a Qualifying Plan following the Effective Date.

**S.     No Third Parties**. There are no third party beneficiaries to this Agreement.

**T.     Authorization**. The Parties hereby expressly warrant and represent that they are duly authorized to enter into this Agreement and any documents, instruments or agreements entered into in connection herewith and that any documents, instruments or agreements granting authority to execute and deliver this Agreement have been made in accordance with applicable law.

**U.     Counterparts**. This Agreement may be signed in counterparts and facsimile or electronic signatures shall be deemed original and effective signatures to the Agreement.

**V.     Severability**. If any provision of this Agreement is held to be inoperative, unenforceable, or invalid under present or future laws effective during the term of this

Agreement, such shall be inoperative, unenforceable, or invalid without affecting the remaining provisions of this Agreement; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised part of this Agreement; and to this end, the provisions of this Agreement are declared to be severable, remaining in full force and effect.

DATED this 15th day of November, 2022.

**NFS LEASING, INC.**
**BY COUNSEL:**

QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue, Suite 600
Phoenix, AZ 85004-2391

By: */s/ Randy J. Pflum*
      Jason D. Curry
      Amelia B. Valenzuela
      Randy J. Pflum
*Attorneys for NFS Leasing, Inc.*

**GPMI CO.**

**BY COUNSEL:**

ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004

By: */s/ Steven N. Berger (with permission)*

      Steven N. Berger
      Patrick A. Clishman
      Michael P. Rolland
*Attorneys for the Debtor*

| | |
|---|---|
| 1 | **THE OFFICIAL UNSECURED CREDITOR'S COMMITTEE** |
| 2 | |
| | **BY COUNSEL:** |
| 3 | |
| | STINSON LLP |
| 4 | 1850 N. Central Ave. Suite 2100 |
| | Phoenix, AZ 85004-4584 |
| 5 | |
| 6 | By: */s/ Alisa C. Lacey (with permission)* |
| | Alisa C. Lacey |
| 7 | |
| | *Counsel for the Official Unsecured Creditor's Committee* |
| 8 | |