James L. Ugalde (No. 022733)
**CLARK HILL PLC**
3200 N. Central Avenue, Suite 1600
Phoenix, Arizona 85012
Telephone:   (602) 440-4800
Facsimile:    (602) 257-9582
E-mail:        jugalde@clarkhill.com

*Attorneys for Eastern Shipping Worldwide, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>GPMI, CO., an Arizona corporation,<br><br>Debtor. | Chapter 11<br><br>Case No.: 2:22-bk-00150-EPB |

**MOTION FOR RELIEF UNDER RULE 60(b) REGARDING CONFIRMATION ORDER'S TREATMENT OF ADMINISTRATIVE CLAIM OF EASTERN SHIPPING WORLDWIDE, INC.**

This motion (this "Motion") is filed by creditor and party-in-interest, Eastern Shipping Worldwide, Inc. ("Eastern"), in the above-captioned Chapter 11 case (the "Bankruptcy Case") of Debtor, GPMI, Co. ("GPMI" or the "Debtor"). Eastern files this Motion in accordance with Bankruptcy Rule 9024, Fed. R. Bankr. P., and Rule 60, Fed. R. Civ. P., seeking to grant Eastern relief as to treatment of its pending administrative claim [Dkt. 466][1] (the "Admin. Claim") as provided in the Court's order [Dkt. 417] (the "Confirmation Order") confirming the Debtor's amended plan [Dkt. 340] (the "Plan").

Eastern is entitled to relief under Rule 60(b), Fed. R. Civ. P., because the Court may have inadvertently overlooked or mistakenly found that Eastern's Admin. Claim did not "benefit the estate" when there was no evidence or facts presented at the Court's confirmation hearing to make such finding. Additionally, since the date of the confirmation hearing, the Debtor and Eastern have disclosed documents and related information (unavailable at the time of the confirmation hearing) in the adversary action (pending as Case

---

[1]   All references to the docket in the Debtor's administrative case shall use the term "Dkt." and all references to the docket in the Adversary Action (defined below) shall use the term "Adv. Dkt."

No. 2:22-ap-00245-EPB, the "Adversary Action") commenced by Debtor that demonstrate that the Debtor was the indeed the owner of the goods in question (i.e., defined as the 7 Shipments below) and that Eastern's storage of such goods benefited the Debtor's estate.

Previously, the Debtor argued that the Court fully adjudicated Eastern's Admin. Claim at the confirmation hearing for Debtor's Plan [*see* Adv. Dkt. 12 and 29]; however, the Court rejected such argument [Adv. Dkt. 40]. In fact, during oral argument on the Debtor's motion for summary judgment [Adv. Dkt. 12], the Court acknowledged that "it may not be fair to say to Eastern, this was your only shot at trying to be able to convince the Court that Eastern prevails" with respect to its Admin. Claim. *See* Audio Recording at Adv. Dkt. 39, starting at minute 4:24 to 4:30.

For these reasons and the others discussed below, to the extent that the Court allows Eastern's Admin. Claim in the pending Adversary Action, Eastern is entitled to relief under Rule 60(b), Fed. R. Civ. P., as to treatment of its Admin. Claim in the Confirmation Order, which will require payment of Eastern's Admin. Claim in accordance with Bankruptcy Code § 503(b)(1)(A), notwithstanding the terms and provision of the Confirmation Order.

To be clear, Eastern is not requesting that the entire Confirmation Order be set aside in accordance with Rule 60(b), Eastern only seeks relief with respect to that portion of the Confirmation Order that treats Eastern's Admin. Claim (to the extent that the Admin. Claim is allowed in the pending Adversary Action) contrary to the provisions of Bankruptcy Code § 503(b)(1)(A).

This Motion is supported by the attached Memorandum of Points and Authorities and the entire record before the Court in the Bankruptcy Case and the Adversary Action, which are incorporated herein by reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     RELEVANT FACTS.**

1.     Eastern is an ocean transportation intermediary with licensing from the Federal Maritime Commission to operate as a non-vessel-operating common carrier, but which Eastern transports its customers' goods by sea in exchange for their payment of freight

1 and other charges incidental to that transportation, which includes inland delivery charges, port-imposed fees, chassis usage charges, demurrage, detention, terminal charges, and storage charges (collectively, "Incidental Charges"). Dkt. 163-1 at ¶ 1.3.[2]

2. On or about October 7, 2020, Debtor signed a *Credit Application and Agreement* with Eastern (the "Credit Agreement") pursuant to which the Debtor granted Eastern a continuing lien on any and all property relating to the Debtor that comes into Eastern's actual or constructive possession, custody or control. Dkt. 163-1 at ¶ 1.4; Decl. ¶ 6.

3. Between April and May 2021, the Debtor requested Eastern arrange the oceanic transportation of certain containerized goods (the "Goods") from ports in China and/or Taiwan to the ports of Los Angeles or Long Beach (collectively the "7 Shipments"). Eastern prepared and sent a booking confirmation request to the Debtor, and as to each request, Eastern received the Debtor's acceptance and Eastern issued "house" bills of lading ("HBLs") for transportation of the 7 Shipments. Dkt. 163-1 at ¶ 1.5; Decl. ¶ 7.

4. In accordance with the parties' stipulated relief, (i) Eastern invoiced the Debtor via e-mail for the 7 Shipments' freight and Incidental Charges, (ii) the Debtor failed to pay Eastern for the 7 Shipments' freight and Incidental Charges, and (iii) prepetition, Eastern exercised a maritime lien on each of the 7 Shipments. Dkt. 163-1 at ¶ 1.6; Decl. ¶ 8.

5. Eastern invoiced the Debtor via e-mail for the 7 Shipments' freight and Incidental Charges. The Debtor, however, failed to pay Eastern for the 7 Shipments' freight and Incidental Charges; therefore, prepetition, Eastern exercised a maritime lien on each of the 7 Shipments and did not deliver them to the Debtor. Dkt. 163-1 at ¶ 1.9. Further, the Debtor has not disputed or provided any documentation controverting that Eastern arranged for the drayage of the 7 Shipments to a third-party warehouse for storage. Dkt. 163-1 at ¶ 1.7; Decl. ¶ 9.

---

[2] *See also,* Declaration in Support of Defendant's Cross Motion for Summary Judgment as to Count II (the "Decl.") at ¶ 5 attached at Adv. Dkt. 21 ("DSOF") as Exhibit A.

6. Eastern arranged for the drayage transportation of the 7 Shipments to a third-party warehouse for storage. Debtor has not disputed or provided any documentation controverting that Eastern incurred fees and costs to store the 7 Shipments post-petition. Proof of Claim No. 48; Answer, Adv. Dkt. 5; Decl. ¶ 10.

7. Eastern has incurred substantial post-petition storage fees that constitute administrative claims in the Debtor's Bankruptcy Case. As a result, Debtor owes Eastern a total sum of $1,803,343.77 on the transportation of multiple shipments, including the 7 Shipments. Adv. Dkt. 5; Decl. ¶ 11.

8. Eastern's post-petition storage fees and costs total not less than $129,013.18 pursuant to 11 U.S.C. § 503(b)(1)(A) as of November 1, 2022, which continue to accrue. Adv. Dkt. 5; Dkt. 466; Decl. ¶ 12.

9. Eastern filed its proof of claim at Claim No. 48 in the Bankruptcy Case; however, Eastern's proof of claim specifically provided that Eastern "does not waive, and hereby expressly reserves, its right to file additional claims for other or additional amounts, including but not limited to, unsecured, unsecured priority, and administrative expense claims at the appropriate time." *See* Claim No. 48 in the Bankruptcy Case.

10. Eastern timely filed its Admin. Claim [Dkt. 466] prior to the deadline set forth in the Debtor's Plan. Dkt. 340 and 466.

11. The Complaint in the Adversary Action specifically "prays for a ***determination of the extent, validity, and priority*** of Eastern's claims" including the Admin. Claim, which was filed ***prior to*** the confirmation hearing on November 18, 2022 (the "Confirmation Hearing") and specifically divested the Court from its ability to adjudicate Eastern's Admin. Claim because such claim was not ripe for adjudication in connection with the Confirmation Hearing. Adv. Dkt. 1; Complaint, p. 2; emphasis added.

12. Nothing in the Debtor's Plan precluded Eastern from timely filing and asserting its Admin. Claim in the Bankruptcy Case after the Confirmation Hearing. Dkt. 340. More importantly, the Plan provided that an adversary action will be filed in order to determine "the extent and validity of Claim No. 48[,]" which includes an administrative

claim and a secured claim asserted by Eastern. *See* Plan at ll. 12-15, p. 13.

14. 13. The Complaint and Adversary Action were filed ***prior to*** the Confirmation Hearing "seeking a determination as to the extent and validity of" Eastern's Admin. Claim. Complaint, Count II. Adv. Dkt. 1. As such, Eastern was relying on the claims asserted in the Complaint to have Eastern's Admin. Claim adjudicated in the Adversary Action. Decl. ¶ 13.

14. The Court's Minute Entry [Dkt. 401] (the "<u>ME-401</u>") that denied Eastern's Classification Objection only overruled Eastern's objection to the classification issues raised in the ***confirmation*** pleadings. Dkt. 401. In overruling Eastern's Classification Objection, however, the Court inadvertently overlooked or mistakenly found the following:

> **COURT: THE COURT *FINDS* THAT STORAGE OF THE CARGO SHIPMENTS BY EASTERN SHIPPING WORLDWIDE *PROVIDED NO BENEFIT TO THE DEBTOR'S ESTATE*. IT IS ORDERED OVERRULING EASTERN SHIPPING WORLDWIDE'S OBJECTION TO CONFIRMATION OF THE PLAN.**

ME-401; Dkt. 401; emphasis added.

15. The Court's ME-401, however, could not have concluded that any findings of fact were made by the Court as to any benefit to the Debtor's estate based on Eastern's Admin. Claim because (i) Eastern had not filed its Admin. Claim as of the date of the Confirmation Hearing, and (ii) no facts or evidence were presented prior to or at the Confirmation Hearing relating to Eastern's Admin. Claim. *See* Dkt. 439; and Dkt. *generally*.

16. Based on the Court's finding in ME-401, GPMI filed a summary judgment motion [Adv. Dkt. 12] (the "<u>MSJ</u>") in the Adversary Action claiming that the Court fully adjudicated Eastern's Admin. Claim and that such claim was therefore subject to *res judicata*. The Court rejected GPMI's argument and denied its MSJ. *See* Adv. Dkt. 40.

17. During the Adversary Action, Eastern prosecuted its Admin. Claim by, *inter alia*, propounding discovery on GPMI and issuing a subpoena to the Debtor's attorney-in-fact, the Import Broker (defined below). While GPMI has failed to respond to such discovery, the Import Broker provided its entire file with regard to the 7 Shipments and provided the POs, BOLs, Invoices, Journal Entry (each, defined below) and other documents which Eastern's Expert Report (defined below) is based upon, which newly discovered

evidence (unavailable to the parties at the Confirmation Hearing) is discussed below.

18. In regard to ownership of the Goods comprising the 7 Shipments, the Debtor is deemed to be the owner of the 7 Shipments as a matter of law because, *inter alia*, (a) the Debtor is the "importer of record" and "actual owner of the merchandise" under the applicable rules and regulations of the U.S. Customs and Border Protection ("CBP"); (b) the Debtor is listed as the "importer of record" on the applicable CBP Form 3461, Boxes 10 & 11; and (c) the Debtor filed CBP Form 7501 stating, "I declare that I am the Importer of record" and "actual owner," Box 36. Declaration of Importer of Record (Owner or Purchaser).[3]

19. Specifically, in order to obtain entry into the United States through the CBP, the Debtor's acting attorney-in-fact, ACB Import Services, Inc. d/b/a Arizona Custom Brokers (the "Import Broker"), represented to the CBP on several 3461 Forms submitted to the CBP (collectively, the "3461 Forms") that the Debtor is listed as the "Ultimate Consignee" (in Box 10 of the 3461 Forms) and the "Importer of Record" (in Box 11 of the 3461 Forms). *See* Expert Report at pp. 9-10, 19.

20. The Import Broker, acting as attorney-in-fact for the Debtor,[4] filed the 3461 Forms to the CBP in accordance with 19 U.S.C. § 1484. Dkt. 466 ¶ 15.

21. The "required documentation and information" described in 19 U.S.C. § 1484(a)(2)(B) above is identified in 19 C.F.R. §§ 141.61(d) and 142.3, which includes CBP Forms 3461 and 7501. Dkt. 466 ¶ 16.

22. As to CBP Form 7501, in Box 36 of these forms, the Debtor represented and declared to the CBP that the Debtor was "Importer of Record" and the "actual owner, purchaser, or consignee" or the "owner or purchaser or agent thereof." Dkt. 466 ¶ 16.

23. The purchase order (each, a "PO") attached at Exhibit 2 of the Expert Report between the Debtor and a seller of the Goods (the terms are similar, if not identical, for all

---

[3] *See* Expert Opinion Report (the "Expert Report") attached to DSOF as Exhibit B at pp. 9-10, 18.
[4] *See* the "Certification" in Box 27 of each of the 3461 Forms clearly identifying that the Import Broker is acting as attorney-in-fact for the Debtor.

sellers of the Goods comprising the 7 Shipments), is evidence of the following:

>   (a) The "PO is considered the [Debtor's] acceptance of a seller's offer to sell and ***represents GPMI's intent to take ownership of the goods***."
>   (b) The "payment terms are stated as, "BOL 60 DAYS" which means GPMI pays the for merchandise 60 days from the bill of lading date. With 30 days transit time from Taiwan to Arizona, GPMI was in possession of the raw materials prior to paying for the goods, ***which represents ownership of the goods***."
>   (c) The "Incoterms Rule was 'FOB, KAOHSIUNG, TAIWAN' which, per the ICC Incoterms publication, means that [the seller] delivered the goods when the goods were loaded on board the ship at the port of origin and GPMI was then responsible for risk of loss or damage to the goods and as such, ***had a financial and insurable interest in the goods***. This is yet another indicator that GPMI was owner of the goods."

Expert Report, p. 15; emphasis added.

24. The bill of lading (each, a "<u>BOL</u>") attached at Exhibit 4 of the Expert Report between the Debtor and a seller of the Goods (the terms are similar, if not identical, for all sellers of the Goods comprising the 7 Shipments), is evidence of the following:

>   (a) This "non-negotiable house ocean bill of lading shows GPMI as the 'CONSIGNED TO' party, as well as the 'NOTIFY PARTY', ***thus establishing GPMI as the consignee and merchant*** and providing additional support for the Opinion that ***GPMI was the owner of the goods*** in all [this seller's] transactions[.]"
>   (b) This BOL shows, "FREIGHT COLLECT", which is consistent with the "FOB, KAOHSIUNG, TAIWAN" Incoterms Rule, ***which means that GPMI took delivery of the goods when loaded on the ship at origin and that GPMI was responsible for risk of loss or damage to the goods, as well as all transportation & customs related expenses from that point forward***. Again, ***this establishes GPMI as having a financial and insurable interest in the goods*** and is an example of Intent of the Parties and application of the Incoterms Rules meaning ***that proves ownership [of the Goods] by GPMI***.
>   (c) The "payment terms were 'BOL 60 DAYS', meaning that GPMI had credit terms with [the seller of the Goods] ***and [GPMI] took possession and ownership of the goods prior to paying for them***."

Expert Report, p. 17; emphasis added.

25. The CBP Form 7501 (each, a "<u>Form 7501</u>") attached at Exhibit 5 of the Expert Report delivered by the Import Broker to the CBP (the terms are similar, if not identical, for all Form 7501s of the Goods comprising the 7 Shipments), is evidence of the following:

>   (a) Field 23 [of the Form 7501] shows ***GPMI's IRS number (aka Employer Identification Number)*** and fields 4 & 5 show that the ***clearance was done under GPMI's continuous surety bond***.
>   (b) Fields 25 & 26 show GPMI as the "Ultimate Consignee" and "Importer of Record", and Field 36 ***is GPMI's declaration that [it] is the owner of the merchandise being cleared through customs*** (signed by the customs

broker, Arizona Customs Brokers, that had a power of attorney from GPMI to do so).

    (c) The terms "Ultimate Consignee" and "Importer of Record" ***meet the regulatory meaning of the owner of the goods and the intent of GPMI to portray itself as the owner of the goods*** is clear from the declaration in Field 36.

Expert Report, p. 18; emphasis added.

26. The CBP Form 3641 (each, a "Form 3641") attached at Exhibit 6 of the Expert Report delivered by the Import Broker to the CBP (the terms are similar, if not identical, for all Form 3641s of the Goods comprising the 7 Shipments), is evidence of the following:

    (a) The Form 3461 shows GPMI as both the "ULIMATE CONSIGNEE" (Field 10) and "IMPORTER OF RECORD" (Field 11) ***both of which are aligned with the regulatory meaning of owner of the goods***.
    (b) Field 8 also shows the Employee Identification Number of GPMI as the party making entry.
    (c) The "CERTIFICATION" in Field 27 states that ***GPMI is the party applying for entry*** and that ***[GPMI's] continuous bond covers the duties owed*** (signed by Arizona Customs Brokers with power of attorney).
    (d) All the above ***meets the regulatory meaning of owner*** and is yet ***more proof of GPMI's ownership of the goods***.

Expert Report, p. 19; emphasis added.

27. The sample invoice (each, an "Invoice") from Arizona Customs Brokers (defined above as, the "Import Broker") attached at Exhibit 7 of the Expert Report between the Debtor and the Import Broker (the terms are similar, if not identical, for all sellers of the Goods comprising the 7 Shipments), is evidence of the following:

    (a) This Invoice shows that [the Import Broker] also paid the "DUTIES SUBJECT TO LIQUIDATION/CUSTOMS FEES" to U.S. Customs & Border Protection [i.e., the CBP] ***on behalf of GPMI and in turn invoiced them the same amount that was shown on the corresponding [Form] 7501***.
    (b) It is a common Practice of the Trade for a customs broker to pay duties on behalf of the Importer of Record and then bill the Importer.
    (c) The customs broker invoice is an important element of the Documentation Trail in that ***it demonstrates that GPMI portrayed itself (and was) the owner of goods by having ACB pay the duties on their behalf***.

Expert Report, p. 20; emphasis added.

28. The cash receipt journal (each, an "Journal Entry") from Arizona Customs Brokers (defined above as, the "Import Broker") attached at Exhibit 8 of the Expert Report between the Debtor and the Import Broker (the terms are similar, if not identical, for all sellers of the Goods comprising the 7 Shipments), is evidence of the following:

> (a) This [Journal Entry] is the Cash Receipt Journal of Arizona Customs Brokers that shows GPMI was billed for this transaction for the $318.54 that corresponds to the previously referenced invoice # 001 405426.
> (b) This Cash Journal also shows that GPMI paid the invoice in full, which is a ***prime example of the Documentation Trail and the intent of GPMI as being owners of merchandise***.

Expert Report, p. 21; emphasis added.

29. Each of the POs, BOLs, Form 7501s, Form 3641s, Invoices and Journal Entries provided or obtained relating to the 7 Shipments evidence similar, if not identical, conclusions with respect to the Goods comprising the 7 Shipments. *See* Expert Report, pp. 9-14, 15-51.

30. Based upon the POs, BOLs, Form 7501s, Form 3641s, Invoices, Journal Entries and other information and documentation provided or obtained relating to the 7 Shipments, it can be conclusively established as follows:

> (a) That the Debtor was indeed the ***buyer, owner, consignee, merchant and party with a financial and insurable interest in the goods*** for all of the transactions between GPMI, CO. and their three suppliers, Web-Pro Corporation, Changxing Kingke Import and Export Co., and Hangzhou Bonyee Daily Necessity Technology Company Co., Ltd.
> (b) With specific reference to the "7 Shipments" alluded to in [Eastern's Admin. Claim] . . . that ***GPMI, CO. was the buyer, owner, consignee, merchant and party with a financial interest in those goods.***
> (c) ***GPMI, CO., established itself as the owner of the goods from both a commercial and regulatory perspective***. Elaborated upon in detail throughout the balance of the Report, . . . ***GPMI, CO. commercially portrayed itself*** as, and behaved in the capacity ***of the buyer, owner, consignee, merchant and party with a financial and insurable interest in the goods***.
> (d) From a regulatory and compliance perspective, . . . based upon the maritime definition of the terms "Merchant" and "Consignee", as well as the U.S. Customs & Border Protection definition of the terms, "Ultimate Consignee" "Importer or Record" and the Foreign Trade Regulations definition of the term, "Principal Parties in Interest". In addition to these definitions, [this conclusion] is supported by the fact that in all instances, ***GPMI declared on Customs Form 7501 "Entry Summary" that it was the owner of the goods covered under each Customs Entry***.
> (e) Finally, [this conclusion] was influenced ***by the fact that GPMI, CO. portrayed itself as a buyer, owner, consignee, merchant and party with a financial and insurable interest in the goods when it secured a Surety Bond payable to U.S. Customs & Border Protection***, and when it executed a Customs Power of Attorney in favor of the customs broker for all of it customs entries, Arizona Customs Brokers.

Expert Report, pp. 10-11; emphasis added

31. Moreover, according to the Section 5.1.2 of the CBP's Customs Directive Order No. 3530-002A, an "Importer of Record" is defined as the owner or purchaser of the

goods, or when designated by the owner, purchaser, or consignee, a licensed Customs broker. CBP Customs Directive Order No. 3530-002A is attached to DSOF as <u>Exhibit C</u>.

32. In each of the HBLs for the 7 Shipments, the Debtor is listed and identified as the "Merchant" which includes the consignor, shipper, exporter, seller, ***consignee, owner of the Goods,*** or the lawful holder or endorsee of this Bill of Lading, and any Person lawfully acting on behalf of any of the aforementioned Persons. "Bill of Lading Contract Terms and Conditions" attached to each of the HBLs in the form attached to Eastern's Claim No. 48. Finally, as another example that the Debtor was the owner of the goods that it ordered, the Expert Report attaches several invoices for such goods ordered by the Debtor which clearly designates that such goods were shipped to the Debtor (i) "FOB KAOHSIUNG, TAIWAN[,]" and (ii) "FOB SHANGHAI[.]" Expert Report, pp. 15, 24, 30, and 45.

33. In regard to whether Eastern's storage and related costs benefited the Debtor's estate, it is clear that the Debtor ***induced*** Eastern to keep the goods in the 7 Shipments ***available*** for use in the Debtor's post-petition business operations, which was a benefit to Debtor and its bankruptcy estate. *See* 341 Hearing Audio File, starting at minute 27:45; Dkt. 466 at ¶ 21.

34. Eastern relied on representations from the Debtor that it could use the Goods comprising the 7 Shipments for the Debtor's business operations and productions. In fact, the Debtor and Eastern have continued their discussions to use a portion of the Goods for the Debtor's business operations during the pendency of the Adversary Action. *See* Decl. ¶ 14.

## II. <u>ARGUMENT</u>.

### A. <u>Standard for Relief Under Rule 60(b)</u>.

Rule 60(b)(1), Fed. R. Civ. P., applicable to these proceedings through Bankruptcy Rule 9024, Fed. R. Bankr. P., permits relief from a final order or judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." The U.S. Supreme Court recently held that the "mistake" provision of Rule 60(b)(1) provides relief for both "factual errors" and "a judge's errors of law." *See Kemp v. United States*, 213 L. Ed. 2d 90, 97, 142 S. Ct.

1856, 1863 (2022). The *Kemp* Court further clarified that relief under Rule 60(b)(1) is not limited to "'obvious' legal mistakes" and "covers all mistakes of law by a judge[.]" *Id*.

The Supreme Court in *Kemp* also explained that "courts have long found that ***excusable neglect*** may involve legal error."[5] *Id*. at 1863; emphasis added. The *Kemp* Court continued by explaining that other courts have a "similar history of granting relief based on '***judicial inadvertence***.'"[6] *Id*. at 1863; emphasis added.

In addition, relief from a final order on the basis of newly discovered evidence is warranted if "(1) the moving party can show the evidence relied on in fact constitutes newly discovered evidence; (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1136 (9th Cir. 2022); *citing*, *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003).

Finally, according to Rule 60(c)(1), Fed, R. Civ. P., all Rule 60(b) motions must be "made within a reasonable time." And, as noted in *Kemp*, "[w]hat constitutes reasonable time necessarily depends on the facts in each individual case." *Kemp*, 142 S. Ct. at 1865; *citing*, 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2866 (3d ed. 2022).

**B. <u>Eastern is Entitled to Rule 60(b) Relief Because of Mistake, Inadvertence and/or Excusable Neglect.</u>**

As noted above, the Supreme Court in *Kemp* unequivocally holds that relief under Rule 60(b) is appropriate where there is a mistake regarding "factual errors" and/or "a judge's errors of law[,]" which includes any and "all mistakes of law by a judge[,]" and are

---

[5] *See, e.g., Lenaghan v. Pepsico, Inc.*, 961 F.2d 1250, 1254-1255 (C.A.6 1992) (per curiam) ("understandable, albeit mistaken, reading of " a local rule); *A. F. Dormeyer Co. v. M. J. Sales & Distributing Co.*, 461 F.2d 40, 42-43 (C.A.7 1972) (misunderstanding of summons and relevant legal rules); *Provident Security Life Ins. Co. v. Gorsuch*, 323 F.2d 839, 843 (C.A.9 1963) (erroneous understanding of Federal Rule of Civil Procedure 12).

[6] *Citing*, *Larson v. Heritage Square Assocs.*, 952 F.2d 1533, 1536 (C.A.8 1992) (emphasis added); *see also, e.g., O'Tell v. New York, N.H. & H.R. Co.*, 236 F.2d 472, 475 (C.A.2 1956) (judge's failure to deduct setoff in entering judgment was "inadvertence" under Rule 60(b)).

not limited to "'obvious' legal mistakes[.]" *Kemp*, 142 S. Ct. at 1863. Moreover, it is clear that "courts have long found that ***excusable neglect*** may involve legal error[;]" and, that other courts have a "grant[ed] [Rule 60(b) relief based on '***judicial inadvertence***.'" *Id*.; emphasis added.

In this case, at the Confirmation Hearing, which was heard and concluded on an expedited basis, the Court did not hear or consider any facts or evidence relating to Eastern's Admin. Claim, including (i) whether the Goods were owned by the Debtor, and (ii) whether Eastern's storage of such Goods benefited the Debtor's estate. As such, the Court inadvertently overlooked or mistakenly found "**THAT STORAGE OF THE CARGO SHIPMENTS BY EASTERN SHIPPING WORLDWIDE PROVIDED NO BENEFIT TO THE DEBTOR'S ESTATE**" when it issued ME-401. *See* Dkt. 401, p. 3.

This point is further emphasized by the Court at the June 27, 2023 hearing in the Adversary Action, where the Court specifically acknowledged the following with respect to the exigent circumstances at the Confirmation Hearing:

> Court: When the plan was confirmed, the Debtor was against the, . . . in a corner, a tight corner, and everyone was telling the Court that if we don't do something right now, the Debtor is dead and unsecured [creditors] get nothing. . . and no one will see a recovery. It's Armageddon. And, that meant that things needed to be done on an expedited basis . . .
>
> Court: I can see why, if I were Eastern, . . . if not today [at the Confirmation Hearing], someday I [Eastern] want to have an opportunity to have an evidentiary hearing to show that, that which I [Eastern] can't convince the Court is the justification for preventing confirmation, at least provides me [Eastern] with an administrative claim . . .

*See* Audio Recording at Adv. Dkt. 39, starting at minute 2:54 to 4:30. During the Confirmation Hearing, this is exactly what Eastern's counsel explained and urged to the Court, which was expressed as follows:

> Court: It doesn't say who owns it. That's what I meant to point out.
>
> Counsel: Well, you know, and so -- and if you look at those documents and if you read those with the applicable -- the Title 19 of the U.S. Code and the Code of Federal Regulations, they all tie together saying who owns these products.
> * * *
> Court: Go ahead.
>
> Counsel: *That issue should be addressed at an adversary action*.

Dkt. 439 at 14:15-15:1; emphasis added.

> Counsel: They were the purchaser. They were on the bills of lading.
> Court: Got you. They were the purchaser.
> Counsel: They represented to the U.S. Customs Agency that they were the importer and owner of these goods.
> Court: They lied. I'm just trying -- I'm not trying to be difficult. I'm just trying to say it seems to me like -- do you disagree with Mr. Berger that the manufacturer -- the Chinese manufacturer -- said you can't have them because you have not paid for them?
> Counsel: I don't know. ***That's an issue for the adversary action***.

Dkt. 439 at 15:9-20; emphasis added.

> Counsel: The Debtor did not pay for the goods that it purchased. Correct.
> Court: But you say they owned them.
> \* \* \*
> Counsel: And because -- I mean, is ***this a plan confirmation issue[.] Because really, any interest in estate property needs to be dealt with under Bankruptcy [Rule] 7001***.
> Court: ***I know. I'm trying to find out whether this is an impediment to confirmation***.
> \* \* \*
> Court: -- unless you've got -¬what I expected was, no, no, I can show -- I got the deposition of the Debtor's principal saying we own this, we paid for it a month before it was shipped. Hmm, that's pretty good evidence that it's property of the estate. But --
> Counsel: ***And we could probably get that in adversary action***.
> Court: Really?
> Counsel: I don't know. ***We haven't even answered the complaint***.
> Court: ***Yeah, it's true***. Well, so what do you want me to do, not confirm the case just because of this?

Dkt. 439 at 19:5-7, 19:13-17, and 19:24-20:10 (emphasis added).

In light of the foregoing, it is clear that the Court did not have facts or evidence before it at the Confirmation Hearing to conclude or find that Eastern's storage of the Goods provided no benefit to the Debtor's estate, which suggests that the Court inadvertently overlooked or mistakenly found that there was no benefit to the estate (i.e., resulting in a factual error, mistake in the law, excusable neglect or judicial inadvertence).

Finally, to further illustrate that the Court's finding in ME-401 was a factual error, mistake in the law, excusable neglect or judicial inadvertence, such finding by the Court was the ***sole*** basis in which GPMI filed its MSJ in the Adversary Action claiming that the Court

fully adjudicated Eastern's Admin. Claim and that such claim was therefore subject to *res judicata*. The Court, however, rejected GPMI's argument and denied its MSJ, thereby allowing Eastern to present evidence to support its Admin. Claim in the Adversary Action. Adv. Dkt. 39 and 40.

### C. <u>Eastern is Entitled to Rule 60(b) Relief Because of Newly Discovered Evidence</u>.

As noted above, in connection with the Adversary Action, Eastern issued written discovery to GPMI and the Import Broker. While GPMI has failed and refused to respond to Eastern's discovery (which was due by April 24, 2023), the Import Broker provided its entire file with regard to the 7 Shipments including the above-referenced POs, BOLs, Invoices, Journal Entry and other documents which the Expert Report is based upon (the "<u>New Evidence</u>"). Such New Evidence provided by the Import Broker constitutes newly discovered evidence because it was unavailable to the parties at the Confirmation Hearing. As noted above, the parties could not have reasonably been expected to obtain such information given the expedited basis and exigent circumstances in which the Court conducted the Debtor's confirmation proceedings.

More importantly, had the Court been presented with the New Evidence at the Confirmation Hearing—demonstrating that the Debtor clearly had an ownership interest in the Goods comprising the 7 Shipments—the Court likely would not have made its finding in ME-401 that Eastern's storage of the Goods did not benefit the estate.

Specifically, based on the New Evidence, the Debtor established itself as the (i) ***buyer, owner, consignee, merchant and party with a financial and insurable interest in the goods*** for all of the transactions between GPMI, CO. and their three suppliers, (ii) ***the buyer, owner, consignee, merchant and party with a financial interest in those goods***, and (iii) ***as the owner of the goods from both a commercial and regulatory perspective***, and (iv) ***commercially portrayed itself*** as, and behaved in the capacity ***of the buyer, owner, consignee, merchant and party with a financial and insurable interest in the goods***. *Supra* ¶ 30.

As such, the New Evidence (1) was not available the parties at confirmation and therefore constitutes newly discovered evidence; (2) Eastern exercised diligence to discover this evidence in connection with the Adversary Action (indeed, Eastern is the only party that has propounded any discovery whatsoever); and (3) the New Evidence is such magnitude that production of it at the Confirmation Hearing would have likely changed the disposition of the case. *Trendsettah USA, Inc.*, 31 F.4th at 1136. For these reasons, Eastern is entitled to relief from the Confirmation Order under Rule 60(b)(2) as a result of the New Evidence.

### D. <u>Eastern's Request for Relief under Rule 60(b) is Timely.</u>

As noted above, Rule 60(c)(1), Fed, R. Civ. P., requires that all Rule 60(b) motions be "made within a reasonable time" and no later than one year after such judgment. As noted in *Kemp*, "[w]hat constitutes reasonable time necessarily depends on the facts in each individual case." *Kemp*, 142 S. Ct. at 1865. In this case, it should be made clear that the Confirmation Order was interlocutory as it may apply to Eastern's Admin. Claim and could not be appealed. In other words, only a final adjudication of Eastern's Admin. Claim in this Adversary Action can be appealed.

"A decision is final if it ends the li[ti]gation on the merits and leaves nothing for the court to do but execute the judgment." *In re Bailey*, 592 B.R. 400, 406–07 (B.A.P. 1st Cir. 2018); *citing*, *In re Bank of New Eng. Corp.*, 218 B.R. 643, 646 (1st Cir. BAP 1998) (internal quotations omitted). As the U.S. Supreme Court stated, "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502, 135 S.Ct. 1686, 1692 (2015); *see also Morse v. Rudler (In re Rudler)*, 576 F.3d 37, 43 (1st Cir. 2009) (stating that to be final, "a bankruptcy order need not resolve all of the issues in the proceeding, but it must finally dispose of all the issues pertaining to a discrete dispute within the larger proceeding") (citation omitted). In contrast, an interlocutory order "only decides some intervening matter pertaining to the cause, and [] requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *In re Bank of New Eng. Corp.*, 218 B.R. at 646 (citations omitted).

In this case, according to the Debtor's Plan, the Adversary Action was filed in order to determine the extent, validity and priority of Eastern's Admin. Claim [*see* Plan at ll. 12-15, p. 13]. Indeed, the adversary Complaint specifically "prays for a ***determination of the extent, validity, and priority*** of Eastern's claims" including the Admin. Claim. Complaint, p. 2; emphasis added. As such, and assuming that the Confirmation Order had any impact on Eastern's Admin. Claim, the Confirmation Order was nothing more than an interlocutory ruling (not subject to appeal by Eastern) pending adjudication by this Court of Eastern's Admin. Claim "on the merits" of such claim in the Adversary Action. *Bank of New Eng. Corp.*, 218 B.R. at 646.

Moreover, this Motion is timely because the Court has not entered a final decree and closed the Bankruptcy Case. Importantly, the Court's ruling on GPMI's MSJ confirms that its ruling on Eastern's Classification Objection and any impact on its Admin. Claim was interlocutory in nature, which did not preclude Eastern from prosecuting its Admin. Claim. Additionally, because Debtor's Plan was prosecuted on an expedited basis under exigent circumstances, Eastern needed time to obtain the New Evidence, but at all times, has diligently pursued the facts and evidence needed to establish its Admin. Claim.

### E. The Newly Discovered Evidence Is Important Enough to Change the Direction of the Case.

As previously established, the New Evidence clearly shows that the Debtor is the owner of the Goods, and that there is a good basis for Eastern's assertion that there was a benefit to the Debtor's estate that gives rise to Eastern's Admin. Claim. To be clear, Eastern will seek to establish the benefit to the Estate as part of the Adversary Action, but Eastern asserts that the New Evidence supports its position, such that the Court should not have ruled that there was no benefit to the estate. As such, at least as to the Debtor's treatment of Eastern's Admin. Claim, the New Evidence supports Eastern's position that it should have relief from the Confirmation Order with respect to its Admin. Claim, which does change the direction of the case as to the treatment of Eastern's Admin. Claim.

## III. CONCLUSION.

Based on the foregoing, Eastern is entitled to relief from the Confirmation Order with respect to its Admin. Claim, to the extent that the Court allows its Admin. Claim in the Adversary Action.

RESPECTFULLY SUBMITTED this 7th day of July, 2023.

**CLARK HILL PLC**
3200 N. Central Avenue, Suite 1600
Phoenix, Arizona 85012

By: /s/ *James Ugalde*
   James L. Ugalde
*Attorneys for Eastern Shipping Worldwide, Inc.*

E-FILED and SERVED, pursuant to L.R. Bankr. P. 9076-1, via the Court's CM/ECF system to all CM/ECF registrants on this 7th day of July, 2023.

COURTESY COPIES of the foregoing emailed this same date to:

Steven N. Berger
Patrick A. Clisham
Michael P. Rolland
Engelman Berger, P.C.
2800 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
snb@eblawyers.com
pac@eblawyers.com
mpr@eblawyers.com
*Attorneys for GPMI Litigation Trust*

Larry L. Watson
Office of the U.S. Trustee
230 N. First Ave., Suite 204
Phoenix, Arizona 85003
larry.watson@usdoj.gov
ustpregion14.px.ecf@usdoj.gov

/s/ *Kelly Webster*